## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE


**Valerie Marie Breton**

     v.                            Civil No. 16-cv-023-PB
                                          Opinion No. 2017 DNH 061

**US Social Security Administration,**
**Acting Commissioner, Nancy Berryhill**


### MEMORANDUM AND ORDER


Valerie Marie Breton challenges the decision of the Acting Social Security Commissioner to deny her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner moves for an order affirming the decision. For the following reasons, I affirm.


### I.    BACKGROUND


In accordance with Local Rule 9.1, the parties have submitted a joint statement of stipulated facts (Doc. No. 9). Because that joint statement is part of the court's record, I do not recount it here. I discuss facts relevant to the disposition of this matter as necessary below.

## II. <u>STANDARD OF REVIEW</u>

I am authorized under 42 U.S.C. § 405(g) to review the pleadings submitted by the parties and the administrative record and enter a judgment affirming, modifying, or reversing the "final decision" of the Commissioner. That review is limited, however, "to determining whether the [Administrative Law Judge] used the proper legal standards and found facts [based] upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). I defer to the Administrative Law Judge's (ALJ's) findings of fact, so long as those findings are supported by substantial evidence. Id. Substantial evidence exists "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam) (quoting Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)).

If the substantial evidence standard is met, the ALJ's factual findings are conclusive, even where the record "arguably could support a different conclusion." Id. at 770. Findings are not conclusive, however, if the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam). The ALJ is responsible for determining

2

issues of credibility and for drawing inferences from evidence in the record.  Irlanda Ortiz, 955 F.2d at 769.  It is the role of the ALJ, not the court, to resolve conflicts in the evidence.  Id.

### III. ANALYSIS

Breton is a fifty-five-year-old woman who previously worked as an administrative assistant, esthetician, and service dispatcher.  Tr. at 175.  She filed a claim for DIB in January 2013, alleging disability as of October 4, 2012.  After her claim was denied, she requested a hearing before an ALJ.  Tr. at 99.  At the July 2014 hearing, which her attorney and a vocational expert also attended, Breton testified before the ALJ.  Tr. at 55-79.  The next month, the ALJ issued a written decision concluding that she was not disabled.  Tr. at. 22-36.

The ALJ evaluated Breton's claim under the five-step sequential process used for determining whether a claimant is disabled.  See 20 C.F.R. § 404.1520(a).  At step one, the ALJ found that she had not engaged in substantial gainful employment since her alleged disability onset on October 4, 2012.  Tr. at 24.  At step two, the ALJ found that she had severe impairments of fibromyalgia and affective disorder, but declined to find other severe impairments.  Tr. at 24-26; see § 404.1520(c).  At step three, the ALJ found that her impairments did not meet or

3

medically equal the severity of a listed impairment that would qualify her as disabled. Tr. at 26–28; see § 404.1520(d). The ALJ then found that despite her impairments, she had the residual functional capacity to perform light work, subject to additional specified limitations. Tr. at 28–34; see § 404.1545. Based on that assessment, the ALJ determined that she could perform her past relevant work as an administrative clerk. Tr. at 35. In the alternative, the ALJ found at step five that even if Breton could not perform her past work, her RFC enabled her to transition to other work in the national economy. Tr. at 35–36. Accordingly, the ALJ concluded that Breton was not disabled. Tr. at 36. In November 2015, the Appeals Council declined to review the ALJ's decision. Tr. at 1. The ALJ's decision thus constitutes the Acting Commissioner's final decision, and this matter is now ripe for judicial review.

In January 2016, Breton appealed the ALJ's decision to this court. Doc. No. 1. On appeal, Breton argues that the ALJ's decision must be reversed because he incorrectly assessed her residual functional capacity and erred in concluding at steps three, four, and five that she was not disabled. See Doc. No. 7-1. Breton contends that the ALJ erred in finding her statements not fully credible, and in placing great weight on the opinions of psychologists and the state's physician, but only limited weight on the opinion of her treating primary care

4

physician.  The Acting Commissioner argues in response that the ALJ's determinations were supported by substantial evidence.  In the following order, I address the ALJ's credibility determination, the weight he accorded to various medical opinions, and his conclusions at steps three, four, and five.

## A.    Credibility Determination

The ALJ recounted and considered Breton's statements regarding her symptoms and limitations, but ultimately concluded that the evidence did not support her allegations to the extent alleged.  Tr. at 29.  Breton challenges this finding by arguing that she consistently described disabling symptoms and limitations, which are reflected in her diagnoses.  The Acting Commissioner responds that the ALJ's credibility determination is entitled to deference because Breton's accounts conflicted with the medical record and her daily activities.

"It is the ALJ's responsibility to determine whether a claimant's statements about [her] symptoms are credible." Otero v. Colvin, 2015 DNH 161, 10; see 20 C.F.R. § 404.1529(c) (2016) (since amended).  "[SSR] 96-7p prescribes a two-step process that an ALJ must follow to evaluate the veracity of a claimant's subjective complaints." Otero, 2015 DNH 171, 10; see SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996).  "First, the ALJ must consider whether the claimant is suffering from 'an underlying medically determinable physical or mental impairment[] . . .

5

that could reasonably be expected to produce the individual's pain or other symptoms.'" Otero, 2015 DNH 171, 10-11 (alterations in original) (quoting SSR 96-7p, 1996 WL 374186, at *2).  "Second, the ALJ must determine whether the claimant's statements about h[er] symptoms are substantiated by objective medical evidence."  Id. at 11.  "If not, the ALJ must consider other relevant information to weigh the credibility of h[er] statements."  Id.  "The ALJ's credibility assessment 'is entitled to deference, especially when supported by specific findings.'"  Id. (quoting Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam)).  "This is because the ALJ, not the reviewing court, 'observed the claimant, evaluated [the claimant's] demeanor, and considered how that testimony fit in with the rest of the evidence . . . ."  Id. (alterations in original) (quoting Frustaglia, 829 F.2d at 195).

Breton argues that the ALJ did not sufficiently credit her statements about her symptoms, which she claims were consistent across "her written reports to Social Security as well as her verbal reports to her treating providers."  Doc. No. 7-1 at 13.  In determining whether a claimant is disabled, the ALJ must "consider all [of the claimant's] symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and

6

other evidence." 20 C.F.R. § 404.1529(a) (2016) (since amended). That "other evidence" includes a claimant's own reports, but a claimant's "statements about [her] pain or other symptoms will not alone establish that [she is] disabled." Id. Breton complained of a litany of physical symptoms (e.g., pain in her back, toes, feet, stomach, shoulders, arm, groin, and knees; numbness in her hand and cramping when she grips; difficulty sleeping; and fainting from pain), manifesting in a variety of physical limitations (e.g., reduced range of motion, difficulties standing or sitting for extended periods, driving longer than fifteen to twenty minutes, and an inability to bend over), as well as mental symptoms (e.g., depression, anxiety, panic attacks, fatigue, confusion, and poor memory). The ALJ declined to credit Breton's reports of her symptoms to the extent she alleged. See SSR 96-7p, 1996 WL 374186, at *4 ("The adjudicator may . . . find an individual's statements, such as statements about the extent of functional limitations or restrictions due to pain or other symptoms, to be credible to a certain degree."). In explaining his finding, the ALJ addressed a variety of sources. The ALJ made many specific citations to her statements, treatment records, diagnostic findings, and the opinions of treating and non-treating sources. See Tr. at 28-35. He contrasted her subjective reports with the objective medical evidence and her activities. He also observed

7

inconsistency in her reports to medical sources. Although "the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days,'" the ALJ considered and substantially recounted her longitudinal medical record. See SSR 12-2p, 2012 WL 3104869, at *6 (July 25, 2012).

Breton argues that the ALJ's decision "consistently downplays [her] diagnoses." Doc. No. 7-1 at 13. As an example, she offers the ALJ's statement that "[i]n October, 2012, Dr. O'Brien stated she was improved and that her final diagnosis was 'probably fibromyalgia' although patient notes show only a continued diagnosis of chronic pain." Doc. No. 7-1 at 13. Breton seizes on the fact that the treatment notes from that date also include a number of other diagnoses, including anxiety and depression. But she reads too much into the ALJ's statement. The ALJ did not deny that she had other diagnoses. Rather, the ALJ described the October 2012 notes in the context of Breton's consultation with a rheumatologist regarding a possible fibromyalgia diagnosis, and the ALJ's statement is fairly interpreted as merely noting that fibromyalgia was not conclusively diagnosed as of October 2012.

The ALJ also noted that the records of Breton's treating providers contain what could reasonably be interpreted as reservations. For example, her degenerative disk disease was determined to be non-severe, and even her most sympathetic

medical source, Dr. O'Brien, noted that it "certainly could account for some of her pain but probably not to the degree that she is feeling," and there was "no clear answer as to what [was] causing her pain." Tr. at 441. Similarly, the physician she repeatedly saw for pain management, Dr. Baccus, concluded that a "significant portion of her total pain [picture] is an undertreated mood disorder and [C]ymbalta may help both the mood and the musculoskeletal pain." Tr. at 254. Dr. Baccus further noted that even though she reported less pain in the areas that he treated, she continued to report that her global pain level remained static. Tr. at 251.

More pointedly, support for the ALJ's credibility determination comes from the treatment records from around the time of Breton's alleged disability onset in October 2012. The ALJ recognized that Breton had "improved," citing Dr. O'Brien's treatment notes that "she's been doing somewhat better" and "[o]verall her pain level is fairly well-controlled at this time and her sleep is somewhat functional." Tr. at 367. The treatment notes show that although she had some tenderness on the spine, she was "alert and cooperative," with a "normal mood and affect" and "normal attention span and concentration." Tr. at 369. Between that time and January 2013, when she applied for disability benefits, the record does not show contact with a rheumatologist or any other doctors about any problems. The ALJ

9

also recognized that she never sought out a psychologist or psychiatrist to deal with her emotional and psychological symptoms and limitations.  These considerations provide further support for the ALJ's credibility determination.

The ALJ observed Breton's demeanor and supported his determination with specific findings and citations.  See Otero, 2015 DNH 171, 10-12; see also Frustaglia, 829 F.2d at 195. Based on the substantial evidence recounted above, I conclude that the ALJ's credibility determination is entitled to deference.

## B.   Medical Opinion Weight

Breton next argues that the ALJ improperly gave great weight to the medical opinions of psychologist Dinan, psychologist Schneider, and state physician Fairley, but only limited weight to treating physician O'Brien.  The Acting Commissioner responds by arguing that weighing competing medical opinions is the province of the ALJ, and the ALJ's assessment of the medical opinion evidence is supported by substantial evidence.

The ALJ must consider and evaluate all medical opinions of record.  20 C.F.R. § 404.1527(b)-(c) (2016) (since amended). "The Commissioner must give 'controlling weight' to the opinion of a treating source if that opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic

10

techniques and is not inconsistent with the other substantial evidence in [the] case record.'" Widlund v. Astrue, No. 11-cv-371-JL, 2012 WL 1676990, at *8 (D.N.H. Apr. 16, 2012) (alteration in original) (quoting §§ 404.1527(c)(2), 416.927(c)(2) (2016) (since amended)), report and recommendation adopted sub nom. Widlund v. U.S. Soc. Sec. Admin., Comm'r, No. 11-cv-371-JL, 2012 WL 1676984 (D.N.H. May 14, 2012). Where the ALJ discounts a treating source's opinion, the ALJ must give good reasons for doing so. § 404.1527(c)(2) (2016) (since amended). Further, "[i]f the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996).

    1.   Dr. O'Brien

The ALJ wrote that he "considered and assigned limited weight to the opinion of treating physician [O'Brien]." Tr. at 33. Dr. O'Brien opined that Breton could frequently lift and occasionally carry up to ten pounds, but never more than that, and she could not stand, sit, or walk for more than five-and-a-half hours collectively in an eight-hour workday. Tr. at 508–09. The ALJ assigned this opinion limited weight because Dr. O'Brien's "conclusions appear based in part on the claimant's subjective complaints and are inconsistent with his treatment notes." Tr. at 33. The ALJ analyzed Dr. O'Brien's opinion in

11

relation to the other evidence in the record, which he cited extensively. For example, the ALJ cited discrete capacity determinations made by Dr. O'Brien and explained why those determinations meaningfully conflict with notations in Dr. O'Brien's own examination records. See Tr. at 33–34. The ALJ's explanation is reasonable and sufficient. I conclude that the ALJ's weighting of Dr. O'Brien's medical opinion was based on substantial evidence.

   2.   Dr. Dinan

The ALJ accorded great weight to the opinion of psychologist William Dinan, Ph.D., and gave two reasons for his assessment. First, the ALJ explained that Dr. Dinan's "conclusions are consistent with his exam of the claimant," in contrast with the weaker relationship between Dr. O'Brien's treatment records and ultimate opinion. See Tr. at 34. Second, the ALJ explained that Dr. Dinan had "special expertise as a psychologist." Tr. at 34. As Dr. Baccus noted, Breton's overall "pain [picture]" could not be explained without a psychological lens, which was lacking. Tr. at 254. Although Breton emphasizes that Dr. Dinan saw her on only one occasion, the ALJ was entitled to give great weight to Dr. Dinan's opinion given its importance to the case and the paucity of other psychological evaluations in the record. I conclude that the

12

ALJ's weighting of Dr. Dinan's opinion was based on substantial evidence.

### 3. Dr. Schneider

The ALJ similarly placed great weight on the opinion of reviewing psychologist Michael Schneider, Psy.D. Tr. at 34. Dr. Schneider reached a conclusion similar to Dr. Dinan's. Tr. at 90. The ALJ, in turn, found that Dr. Schneider's conclusion was reinforced by the similar conclusion of Dr. Dinan. See Tr. At 34, 90. The ALJ also found that Dr. Schneider's psychological expertise had special utility. This substantial evidence justifies the weight that the ALJ placed on Dr. Schneider's opinion.[1] For these reasons, I conclude that the ALJ's weighting of Dr. Schneider's opinion was based on substantial evidence.

### 4. Dr. Fairley

The ALJ also assigned great weight to the opinion of the state agency's reviewing physician, Hugh Fairley, M.D. The ALJ explained that Dr. Fairley's opinion is consistent with the

---

[1] Breton notes that although Dr. Schneider found that she "is able to interact appropriately with peers and supervisors," he also concluded that Breton "is able to respond appropriately to changes in the work setting only in a relatively low stress work environment where supervisory criticism is not overly critical." Tr. at 90. Breton argues that it is "telling" that the ALJ gave little weight to this limitation. Doc. No. 7-1 at 21. But this limitation is vague, and the record reveals that the ALJ's RFC assessment incorporates the limitation that Breton "should not work in a fast paced production job." Tr. at 28.

13

examination records.  Tr. at 33.  To illustrate, the ALJ cited ten granular findings from the medical records and activities of daily living and explained that they comport with Dr. Fairley's individual conclusions.  See Tr. at 33.  Breton nevertheless complains that the ALJ improperly assigned great weight to Dr. Fairley's opinion in part because the opinion was consistent with Breton's daily cell phone gaming.  According to Breton, the ALJ's reliance on this finding "calls his analysis into serious question."  Doc. No. 7-1 at 16.  I disagree.  The finding that Breton complains of was only one of ten that the ALJ highlighted in explaining why Dr. Fairley's conclusions were entitled to significant weight.  Put simply, even if the ALJ's focus on Breton's cell phone gaming was disproportionate to its relevance, Breton, in turn, drastically overstates the importance of that activity in the ALJ's reasoning.  For these reasons, I conclude that the ALJ's weighting of Dr. Fairley's opinion was supported by substantial evidence.

## C.    Step Three: Listings

The ALJ determined at step two that Breton suffered from the severe impairments of fibromyalgia and affective disorder, but found no other severe impairments.  Breton does not challenge the ALJ's step two determination.  Instead, she argues that the ALJ erred at step three in failing to determine that her impairments meet or exceed three listed impairments —

specifically listings 14.06 ("Undifferentiated and mixed connective tissue disease"), 1.04 ("Disorders of the spine"), and 12.06 ("Anxiety . . . disorders"). See 20 C.F.R. § 404.1520(d); see also 20 C.F.R. Part 404, Subpart P, App. 1, Listings 1.04, 12.06, 14.06 (2014) (12.06 since amended).

A claimant is disabled at step three if her impairments qualify for an impairment listed in appendix 1. § 404.1520(d) "Most of the listed impairments are permanent or expected to result in death." § 404.1525(c)(4). Each listing specifies the objective medical and other findings that are required to meet it. § 404.1525(c)(3). If the claimant's impairment "does not meet the criteria of a listing," alternatively "it can medically equal" that criteria. § 404.1525(c)(5). An impairment "is medically equivalent to a listed impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." § 404.1526(a). Medical equivalence is determined by reviewing all the relevant evidence in the record and the effect on the claimant. § 404.1526(c).

"In considering whether [claimant's] symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment," the ALJ looks to whether those indicia "are at least equal in severity to the listed criteria." § 404.1529(d)(3). The ALJ cannot, however,

15

"substitute [a claimant's] allegations of pain or other symptoms for a missing or deficient sign or laboratory finding to raise the severity of [a claimant's] impairment(s) to that of a listed impairment." § 404.1529(d)(3). The claimant has the burden of proving that she qualifies for a listing. See Dudley v. Sec'y of Health & Human Servs., 816 F.2d 792, 793 (1st Cir. 1987) (per curiam).

1.  Disorder of the Spine

Breton asserts in a conclusory manner that her impairments qualify for the spine disorder listed under Listing 1.04. That section provides in pertinent part:

> Disorders of the spine (e.g., . . . degenerative disc disease . . . ), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With: . . . [s]pinal arachnoiditis, confirmed by . . . appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than once every 2 hours . . . .

Part 404, Subpart P, App. 1, Listing 1.04. This argument fails for several reasons. First, Breton has not challenged the ALJ's determination at step two that she lacked a severe impairment of degenerative disk disease. Nor has Breton otherwise explained why her severe impairments satisfy or medically equal this listing. She has failed to cite to the record, meaningfully engage with the listing criteria, marshal evidence (e.g., by explaining the relevance of her cervical spine MRI), or

16

otherwise advance an argument.  Given these failures, I decline to reverse the ALJ's step three determination on the basis of listing 1.04.

2.    Anxiety Disorder and Tissue Disease

Breton next argues that her impairments qualify under sections 14.06 ("Undifferentiated and mixed connective tissue disease") and 12.06 ("Anxiety . . . disorders").  Among other criteria, those sections may involve determining whether the claimant has "marked" limitations in 1) activities of daily living, 2) maintaining social functioning, and 3) concentration, persistence, or pace.[2]  See Part 404, Subpart P, App. 1, Listings 14.06, 12.06 (2014) (12.06 since amended).  Breton argues that the ALJ erred in concluding that her limitations in those categories were not marked.  The Acting Commissioner responds that the ALJ's determinations are supported by substantial evidence.

---

[2] Breton does not explain why she meets or medically equals the other criteria specified in the listing, see, e.g., Listing 14.06(A), so I limit my discussion to the severity of her condition in the areas identified.  In addition, section 12.06 also considers whether the claimant has had "[r]epeated episodes of decompensation, each of extended duration," Listing 12.06(B)(4), or a "complete inability to function outside the area of one's home," Listing 12.06(C).  Breton does not challenge the ALJ's decision on those grounds.

17

### a.    Activities of Daily Living

The ALJ concluded that Breton had a "mild restriction" in her activities of daily living.  Tr. at 27.  He supported his decision with the following evidence:

> The claimant lives with her husband.  She takes care of cats, prepares meals, does household chores, washes laundry, takes care of indoor plants, and drives a vehicle (Ex. 3E/7).  She shops in stores and by computer one to two times per week for 2 to 3 hours.  She manages her own finances and uses a computer program to organize her finances.  She manages her own personal care, although she reported some difficulties due to physical limitations.  She reported that on a typical day she goes to her elderly parents' house in the morning and returns home about 2 p.m., then does housework.  She also plays an internet computer game up to 45 minutes per day using a smart phone, indicating significant use of her hands.  The record indicates no more than mild limitations in activities of daily living that are related to a mental disorder.

Tr. at 27.  In addition, neither psychologist found a marked restriction.  Psychologist Dinan concluded on the basis of a consultative examination that Breton's "abilities to complete activities of daily living are without impairment."  Tr. at 482.  Reviewing psychologist Schneider similarly concluded that Breton had "mild" restrictions in such activities.  Tr. at 85.  For these reasons, the ALJ concluded that her limitations were not marked.

Breton argues that other evidence in the record, not cited by the ALJ, shows that her functioning is markedly impaired.  For example, she notes that she "requires alarms to remind her

to take her medication."  Doc. No. 7-1 at 11.  But that is not uncommon, and the other examples that she supplies similarly fail to materially change the picture of her limitations.

### b.  Social Functioning

The ALJ concluded that Breton has "moderate difficulties" in social functioning.  Tr. at 27.  In reaching this determination, the ALJ explained that she lives with her husband without difficulty, occasionally attends dinner parties, visits her parents twice a week, and has no difficulties "getting along with" her family, friends, and neighbors.  Tr. at 27.  But the ALJ also acknowledged that Breton had notable difficulties with her supervisor at her prior job.  Tr. at 27.  Psychologist Dinan concluded that her "abilities to interact appropriately and communicate effectively are without impairment," Tr. at 482, and psychologist Schneider concluded that Breton's difficulties were no greater than "moderate," Tr. at 89-90.  Breton responds to the ALJ's determination by emphasizing her statements in the record that she is reclusive, "hardly keeps in touch with family and friends," and is "not very social, 'mostly a wallflower.'" Doc. No. 7-1 at 12.  But those traits are also consistent with shyness and introversion, and they do not necessarily entail marked difficulties in social functioning.  In fact, Breton indicated that she got along with many of her coworkers. Accordingly, I conclude that the ALJ's determination that Breton

19

had only moderate difficulties in social functioning was supported by substantial evidence.

### c. Concentration, Persistence, and Pace

The ALJ also concluded that Breton had "moderate difficulties" in concentration, persistence, and pace. Tr. at 27. The ALJ explained that Breton was able to play word games on her cell phone for 45 minutes and that psychologist Dinan concluded, after directly examining and observing Breton, that "she was alert and oriented, and that her memory function was observed to be fair over all time intervals, and intellectual functioning was estimated in the average range." Tr. at 27. Psychologist Dinan also concluded that Breton's "abilities to understand and remember instructions are without impairment." Tr. at 34, 482. But the ALJ did find that Breton had some cognitive limitations, based on her reports of "fatigue and pain that reduces her ability to concentrate and follow verbal instructions," and psychologist Dinan's conclusion that she had limitations when working on unfamiliar tasks or in fast-paced work environments. Tr. at 27, 34, 482. The ALJ considered those limitations to be moderate.

Breton devotes only a sentence to contesting this conclusion. She notes without elaboration that "the ALJ again focuses on the fact that [she] truthfully reported that she plays a computer game on her smart phone" and "uses a computer

20

program to manage her finances." Doc. No. 7-1 at 12. This perfunctory statement does not explain why the ALJ's decision was based on less than substantial evidence. The ALJ's determination was not based simply on her use of computer software, and the ALJ's conclusion echoes those reached by the psychologists. Although Breton did have some limitations in concentration, persistence, and pace, the ALJ had substantial evidence for concluding that they did not rise to the level of "marked."

In sum, the ALJ had substantial evidence for concluding that Breton did not have marked limitations in the areas specified in the listings. Thus, even if the record "arguably could support a different conclusion," the ALJ's findings are conclusive. Irlanda Ortiz, 955 F.2d at 770. Accordingly, I conclude that the ALJ did not commit reversible error in determining that Breton was not disabled at step three.

D.   **Residual Functional Capacity**

Because Breton did not qualify for a step three listing, the ALJ proceeded to assess her residual functional capacity. See 20 C.F.R. §§ 404.1520(a)(4)(iv),(e), 404.1545. The ALJ concluded that, despite her impairments,

> [Breton] has the residual functional capacity to
> perform light work as defined in 20 CFR 404.1567(b)[3]

---

[3] "Light work" is defined as:

21

except she can never climb scaffolds, ropes or ladders; can occasionally bend, stoop, crouch, kneel and crawl; and should never be exposed to unprotected heights. The claimant has the ability to understand, remember and carry out short, detailed and complex instructions. She has the ability to maintain attention for the two-hour periods in the typical 8-hour workday and 40-hour work week. She can respond appropriately to changes, can interact appropriately with peers and supervisors, but should not work in a fast paced production job.

Tr. at 28. In arriving at this RFC assessment, the ALJ relied on the objective evidence in the record together with Breton's subjective reports, to the extent he found her account credible. The ALJ also gave "limited weight to the opinion of treating physician [O'Brien] because his conclusions appear based in part on [Breton's] subjective complaints and are inconsistent with his treatment notes." Tr. at 33. In contrast, the ALJ gave great weight to the opinions of reviewing physician Fairley, examining psychologist Dinan, and reviewing psychologist Schneider. Tr. at 33-34.

---

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [claimant] must have the ability to do substantially all of these activities.
20 C.F.R. § 404.1567(b).

22

Breton's arguments are largely directed at the ALJ's credibility determination and weighting of medical opinions, but those determinations are entitled to deference for the reasons stated above. Having put to rest those arguments, I conclude that the ALJ's RFC assessment was based on substantial evidence.[4] Breton's exertional RFC mirrors the very similar assessment given by the state's reviewing physician, Dr. Fairley. Similarly, Breton's non-exertional RFC is well supported by the opinions of the only two psychologists who provided opinions and by the dearth of objective evidence in the record clearly establishing greater non-exertional limitations. For these reasons, I conclude that the ALJ's RFC determination was based on substantial evidence.

---

[4] Breton emphasizes that because she suffers from fibromyalgia "her case warrants evaluation under the criteria set forth in [SSR 12-2p]." Doc. No. 7-1 at 7; see SSR 12-2p, 2012 WL 3104869. She does not elaborate further, and her intended point is unclear. She offers no "explanation of how the ALJ actually deviated from SSR 12-2P." See Diaz v. U.S. Soc. Sec. Admin., Acting Comm'r, 2015 DNH 174, 4. In fact, "[a]t step two . . . the ALJ recognized fibromyalgia as one of [her] severe medically determinable impairments." See id.; Tr. at 24. Although "the ALJ's decision does not cite SSR 12-2p, that omission does not establish reversible error in the absence of any showing that the decision is materially inconsistent with the regulation." Diaz, 2015 DNH 174, 5; cf. Anderson v. Colvin, 2014 DNH 232, 10-11. Because Breton "has made no such showing, her argument based on SSR 12-2p is without merit." Diaz, 2015 DNH 174, 5.

**E.   Steps Four and Five: Ability to Work**

Breton half-heartedly challenges the ALJ's conclusions that she is not disabled at steps four and five.  The Acting Commissioner responds by arguing that Breton has merely restated her challenges to the ALJ's RFC assessment, and the vocational expert's testimony, which was based on that RFC, offers substantial evidence for the ALJ's conclusion that Breton can work.

At step four, the ALJ must consider the claimant's RFC and her past relevant work.  See 20 C.F.R. §§ 404.1520(a)(4)(iv), (f), 404.1560(b).  The ALJ may use a vocational expert to obtain evidence about whether the claimant is able to do her past relevant work, given the vocational expert's knowledge of its physical and mental demands.  § 404.1560(b)(2).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by the claimant's medical impairment(s) can meet the demands of [her] previous work . . . ."  Id.  If the claimant has the RFC to do her past relevant work, including as generally performed in the national economy, she is considered able to do it and not disabled.  §§ 404.1520(a)(4)(iv); 404.1560(b).  At the hearing below, the ALJ posed a hypothetical RFC, which mirrored Breton's RFC, to the vocational expert and asked about the work implications.  Tr. at

24

74-75. The expert answered that a claimant with that RFC could still perform past relevant work as an administrative clerk. Tr. at 75; see Dictionary of Occupational Titles, No. 219.362-010, 1991 WL 671953. The ALJ permissibly relied on that testimony in concluding that Breton was not disabled at step four. SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

The ALJ also concluded, in the alternative, that Breton was not disabled at step five. A claimant is not disabled at step five if her RFC allows her to adjust to a different job that exists in significant numbers in the national economy. See 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560(c). The vocational expert opined that a hypothetical person with the claimant's age, education, and work experience could indeed adjust to such work. The vocational expert cited the jobs of merchandise marker, cashier II, and sales attendant. See Tr. at 75; Dictionary of Occupational Titles, No. 209.587-034, 1991 WL 671802 (Marker); No. 211.462-010, 1991 WL 671840 (Cashier II); No. 299.677-010, 1991 WL 672643 (Sales Attendant). The ALJ again permissibly relied on that testimony in concluding, in the alternative at step five, that Breton was not disabled.

Breton has little to say about the ALJ's step four and five conclusions. She does not claim that the hypothetical assumptions supplied to the vocational expert materially departed from the ALJ's RFC assessment. See Arocho v. Sec'y of

25

Health & Human Servs., 670 F.2d 374, 375 (1st Cir. 1982). Rather, Breton's challenge is "simply a restatement of [her] argument that the ALJ improperly weighed the evidence in determining her RFC, which the court rejects for the reasons already discussed at length."  See Chapin v. Astrue, 2012 DNH 177, 15.  Thus, I conclude that the ALJ had substantial evidence for his conclusions that Breton was not disabled at steps four and five.

## IV.  CONCLUSION

For the reasons stated, I grant the Acting Commissioner's motion to affirm (Doc. No. 10) and deny Breton's motion to reverse (Doc. No. 7).  The clerk is directed to enter judgment accordingly and close the case.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

March 27, 2017

cc:  William D. Woodbury, Esq.
     Terry L. Ollila, Esq.

26