# United States Court of Appeals
## For the First Circuit

No. 99-1884

CLIFFORD WARD,

Appellant,

v.

COMMISSIONER OF SOCIAL SECURITY,

Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Morton A. Brody, U.S. District Judge]

Before

Boudin, Circuit Judge,
Bownes, Senior Circuit Judge,
and Lynch, Circuit Judge.

Francis M. Jackson, with whom Jackson & MacNichol was on brief, for appellant.

Joseph E. Dunn, Assistant Regional Counsel, Social Security Administration, Office of the General Counsel, with whom Jay P. McCloskey, United States Attorney, James M. Moore, Assistant United States Attorney, and Arthur J. Fried, General Counsel, Social Security Administration were on brief, for appellee.

May 2, 2000

**BOWNES, Senior Circuit Judge.** This is an appeal from an order of the United States District Court for the District of Maine (Brody, J.) affirming a final decision of the Commissioner of Social Security. The Commissioner found that Plaintiff-Appellant Clifford L. Ward's retirement insurance benefits were properly reduced pursuant to the Windfall Elimination Provision ("WEP") of the Social Security Act, 42 U.S.C. § 415(a)(7) (1994). Ward has appealed. Because we find that the WEP applies, we affirm the district court's order.

## I.   Facts and Procedural History

Clifford L. Ward was born on March 30, 1932. He served in the U.S. Air Force from December 28, 1951, to November 28, 1955, and from January 10, 1956, to August 31, 1972. Ward then worked as a civilian federal employee in the Augusta, Maine field office of the U.S. Department of Agriculture ("USDA") Food and Nutrition Service from June 9, 1974, until his retirement in 1988.

In January 1984, the State of Maine assumed responsibility for the Child Nutrition Program, in which Ward worked. On May 17, 1984, the New England regional office sent Ward a letter notifying him that his position was one of two GS-11 positions in the Augusta field office that had been reclassified as GS-9 positions. The letter stated that "a Reduction in Force must be conducted to eliminate the GS-11 positions which are no longer needed and fill two positions at the GS-9 grade level." Ward's supervisor gave him the option of either

-3-

accepting one of the vacant, lower-grade positions or being subject to separation from federal service.  The offer provided that if Ward accepted the lower-grade position he would be entitled to grade retention benefits for two years, with indefinite pay retention thereafter.  Ward accepted the lower-grade position.

In March 1986, Ward received notice from the Food and Nutrition Service ("FNS") that "early-out" retirement was being offered for eligible FNS employees nationwide, from April 1, 1986 until June 1, 1986, subject to an earlier ending date.  Ward did not apply for "early-out" retirement.

On October 20, 1988, Ward applied for retirement, effective December 31, 1988.  He also waived his military retirement pay at this time, in order to use military service credit towards his civil service retirement benefits. Upon retirement, Ward received a monthly civil service pension of $1,601.00, which was increased to $1,649.00 in 1993.

Ward submitted an application for Social Security retirement insurance benefits on January 31, 1994, which included a "modified benefit formula questionnaire" for determination of benefits if the WEP applied.  He became entitled to monthly Social Security payments beginning in April 1994, the first month in which he reached 62 years of age.  In July 1994, Ward received notice from the Social Security Administration that his benefits had been calculated at $262.00 per month.

After receiving this notice, Ward filed a request for reconsideration with the Social Security Administration on September 15, 1994, stating: "The Windfall Elimination Provision should not apply. A reduction in force in 1984 allows for retirement eligibility. Also an 86 early out made me eligible to retire." The agency affirmed its initial determination in a letter sent to Ward on October 12, 1994, on the grounds that Ward did not meet the exceptions to the imposition of the modified benefit formula. On December 9, 1994, Ward filed a request for a hearing before an administrative law judge ("ALJ").

At the April 16, 1996 hearing, the ALJ determined that Ward had received the maximum social security benefits to which he was entitled because he did not meet the exceptions to application of the WEP.[1] Specifically, the ALJ found that Ward was not eligible for a

---

[1]The WEP, as codified at section 415(a)(7)(A) of 42 U.S.C., provides, in pertinent part:

> In the case of an individual whose primary insurance amount would be computed under paragraph (1) of this subsection, who–
>
> (i) attains age 62 after 1985 . . .
>
> and who first becomes eligible after 1985 for a monthly periodic payment . . . which is based in whole or in part upon his or her earnings for service which did not constitute "employment" as defined in section 410 ["non-covered service"] . . . , the primary insurance amount of that individual during his or her concurrent entitlement to such monthly periodic payment and to old-age or disability insurance benefits shall be computed or recomputed under subparagraph (B).

civil service discontinued service retirement in 1984 because he had taken no affirmative action to waive his eligibility to a military retirement pension. Ward claims that this finding was erroneous and the Commissioner agrees that it was.

In July 1996, Ward filed a request for review of the ALJ's decision. Two years later, the Appeals Council notified him that there was no basis to grant his request for review. Because the Appeals Council declined to review the ALJ's decision, it became the final decision of the Commissioner with respect to Ward's claim. See 42 U.S.C. § 405(g) (1994); Da Rosa v. Secretary of Health and Human Servs., 803 F.2d 24, 25 (1st Cir. 1986) (per curiam).

Ward brought a civil action in the United States District Court for the District of Maine, pursuant to 42 U.S.C. § 405(g),

---

The pertinent computation in subparagraph (B) provides:

> There shall then be computed (without regard to this paragraph) a second amount, which shall be equal to the individual's primary insurance amount under paragraph (1) of this subsection, except that such second amount shall be reduced by an amount equal to one-half of the portion of the monthly periodic payment which is attributable to noncovered service performed after 1956 (with such attribution being based on the proportionate number of years of such noncovered service) and to which the individual is entitled (or is deemed to be entitled) for the initial month of his or her concurrent entitlement to such monthly periodic payment and old-age or disability insurance benefits. 42 U.S.C. § 415(a)(7)(B)(i).

seeking review of the Commissioner's final decision.  Ward contended that the Commissioner incorrectly applied the WEP to reduce his retirement insurance benefits.  The Magistrate Judge (Cohen, J.), in his report and recommendation, recommended affirmance of the Commissioner.  The Magistrate Judge held, inter alia, that the ALJ had erred in finding that Ward had to waive his military pension benefits in order to establish eligibility for a pension, but that Ward nonetheless did fall under WEP because the 1984 notice did not make him eligible for a pension.  On July 1, 1999, the district court adopted the Magistrate Judge's report and recommendation and entered an order affirming the Commissioner's decision.  This appeal followed.

## II.  **Standard of Review**

Judicial review of a Social Security claim is limited to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence.  We review questions of law de novo, but defer to the Commissioner's findings of fact, so long as they are supported by substantial evidence.  See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

## III.  **Discussion**

The ultimate issue is whether Ward is exempt from the WEP; this turns on whether he was eligible for a pension before 1986.  We also consider whether, because the ALJ used a different and erroneous ground for decision, we are required to remand.

-7-

The WEP applies to individuals whose careers were split between employment covered by Social Security and government employment with pension benefits. See Das v. Department of Health and Human Servs., 17 F.3d 1250, 1253 (9th Cir. 1994). The reason behind the WEP was that an individual who had been employed as a federal employee with pension benefits and also was entitled to Social Security retirement benefits would receive a windfall because he would be eligible for both Social Security and federal civil service pension payments. See id. The WEP provides a modified formula for calculating the Social Security benefits of persons first eligible after 1985 for both Social Security retirement benefits and a civil service pension. See 42 U.S.C. § 415(a)(7)(B).

This case turns on a seemingly simple dispute. Ward contends he was eligible for a civil service pension in 1984, and is thus exempt from the WEP's modified formula for calculation of benefits. The Commissioner contends that Ward was not eligible for his civil service pension until 1986, and is subject to the WEP.

On appeal, Ward proffers three arguments: (1) the district court erred in failing to remand when it determined that Ward's case had not been properly evaluated by the Commissioner because of an error of law by the ALJ; (2) the district court erred in "going behind" the conclusions of experts and evaluating the factual record directly; and (3) the district court used an improper legal standard when it allowed

-8-

the Commissioner to raise the issue of harmless error when it had not been raised at the administrative level. The first and third arguments dovetail and will be discussed together, followed by a discussion of the second argument.

Ward's first argument is that the district court erred in failing to remand this case to the Appeals Council after it determined that Ward's claim had not been properly evaluated by the Commissioner because of an error of law by the ALJ. Ward contends that because the ALJ applied an improper legal standard in determining whether he was exempt from the WEP, the district court should have reversed and remanded the case to allow the Commissioner to apply the proper legal standard. We disagree.

While an error of law by the ALJ may necessitate a remand, see Da Rosa, 803 F.2d at 26, a remand is not essential if it will amount to no more than an empty exercise. See Dantran, Inc. v. United States Dep't of Labor, 171 F.3d 58, 73 (1st Cir. 1999); Schaal v. Apfel, 134 F.3d 496, 504 (2d Cir. 1998) ("Where application of the correct legal standard could lead to only one conclusion, we need not remand."). The ALJ's error prevented him from inquiring into whether, apart from waiving his military retirement benefits, Ward was eligible for his civil service pension in 1984. Since, however, the record is fully developed and Ward has made no showing that a remand is necessary for the taking of new and material evidence, we can determine on appeal

whether the evidence supports the Commissioner's decision under the appropriate test.  See Benitez v. Califano, 573 F.2d 653, 657 (9th Cir. 1978).

Although the parties improperly use the terminology of "harmless error doctrine," as though this were an issue of the improper admission of evidence, we understand the agency to mean, in a colloquial sense, that there was no harm from the ALJ's use of an erroneous ground of decision because there was an independent ground on which affirmance must be entered as a matter of law.  See, e.g., Perez Torres v. Secretary of Health and Human Servs., 890 F.2d 1251, 1255 (1st Cir. 1989) (using the words harmless and error colloquially); Sprague v. Director, Office of Workers' Compensation Programs, 688 F.2d 862, 870 n.17 (1st Cir. 1982) (same); Miles v. Harris, 645 F.2d 122, 124 (2d Cir. 1981) (same).

Ward contends that the record contains evidence by experts in the field that he was subjected to a reduction in force in 1984 which made him eligible for a pension.  The first item is a letter dated May 3, 1994, to him from James E. Schillinger, Chief of Human Resources Management Service at the Department of Veterans Affairs ("Schillinger letter").  This letter was submitted to the ALJ.  The Schillinger letter states, in pertinent part:

> It is my professional opinion that [Ward] would
> have been eligible for a Civil Service
> Discontinued Service Retirement in 1984 if he had

waived his military retirement pay.  The basis
[sic] eligibility for discontinued service
retirement is 25 years of service at any age or
20 years of service at age 50.  Mr. Ward would
have met both of these criteria by waiving his
military retirement.  The Civil Service
regulation and law provide for such option.
Therefore, Mr. Ward would have been eligible in
1984 if he had a notice of his job abolishment
and prior to any reasonable offer.

The second item is a letter dated May 17, 1984, to Ward from Ward's employer, the USDA Food and Nutrition Service, also submitted to the ALJ, notifying Ward that his position had been reclassified pursuant to a reduction in force.  We have already discussed this letter, supra at pp. 1-2.

Ward also points to a letter dated July 3, 1996, that he received from Maureen Hardy, USDA Food and Consumer Service Acting Personnel Officer for the Northeast Region ("Hardy letter"), which he submitted to the Appeals Council in support of his request for review of the ALJ's decision.  As already noted, the Appeals Council denied review.  The Hardy letter says, in pertinent part:

There are no records currently available
documenting the Reduction in Force of 1984.  But
a review of the information that you provided and
based on the Civil Service Rules and Regulations
as set forth in the Code of Federal Regulations
Chapter 831, it appears that you would have been
eligible for a Civil Service, Discontinued
Service Retirement in 1984 only if you waived
your military retirement pay.  Basic eligibility
for a Civil Service Discontinued Retirement was
25 years of service at any age or 20 years of
service at age 50.  Your documentation indicates

that you would have met this criteria if you had you [sic] waived your military retirement pay.[2]

Ward argues that because the experts' letters were uncontradicted by the Commissioner at the administrative level, the only way the district court could have held he was not eligible for a pension in 1984 was by "going behind the opinions of the experts."

Ward, however, has not directly confronted the issue of whether he actually met the statutory requirements of eligibility to a pension in 1984.  We address this issue.

The language of the WEP, which applies the modified benefit formula to anyone "who first becomes eligible after 1985 for a monthly periodic payment," does not specify how a court is to determine when an individual is "eligible."  Other jurisdictions have held that an individual becomes eligible for his civil service pension, for WEP purposes, at the time he satisfies all prerequisites to the payment of benefits.  See Das, 17 F.3d at 1253; Newton v. Shalala, 874 F. Supp. 296, 300 (D. Or. 1994), aff'd, 70 F.3d 1114 (9th Cir. 1995); Johnson v.

---

[2]There is a split in the circuits on what consideration a federal court should afford to new evidence presented to the Appeals Council when the Appeals Council denies review of the ALJ's decision.  Compare Perez v. Chater, 77 F.3d 41, 45 (2d Cir. 1996) (holding new evidence submitted to the Appeals Council is part of the administrative record for the purposes of judicial review) with Eads v. Secretary of Health and Human Servs., 983 F.2d 815, 818 (7th Cir. 1993) (holding new evidence is not part of the administrative record where Appeals Council denied review).  We decline to decide this issue, which has not been presented to us by the parties, and assume arguendo that the Hardy letter, for whatever it is worth, is properly part of the record.

<u>Sullivan</u>, 777 F. Supp. 741, 743-44 (W.D. Wis. 1991).  This is,
logically and legally, a sound rule, and we thus adopt it.

The statute governing eligibility for civil service
retirement is 5 U.S.C. § 8336(d) (1994 & Supp. III 1997).[3]  It is

---

[3]Title 5, section 8336(d) provides:

An employee who—

(1) is separated from the service <u>involuntarily</u>,
except by removal for cause on charges of
misconduct or delinquency; or

(2) while serving in a geographic area designated
by the Office of Personnel Management, is
separated from the service <u>voluntarily</u> during a
period in which the Office determines that—

(A) the agency in which the employee is
serving is undergoing a major reorganization, a
major reduction in force, or a major transfer of
function; and

(B) a significant percent of the employees
serving in such agency will be separated or
subject to an immediate reduction in the rate of
basic pay (without regard to subchapter VI of
chapter 53 of this title or comparable
provisions);

after completing 25 years of service or after
becoming 50 years of age and completing 20 years
of service is entitled to an annuity. . . .
Notwithstanding the first sentence of this
subsection, an employee described in paragraph
(1) of this subsection is not entitled to an
annuity under this subsection if the employee has
declined a reasonable offer of another position
in the employee's agency for which the employee
is qualified, which is not lower than 2 grades
(or pay levels) below the employee's grade (or
pay level), and which is within the employee's

- 13 -

undisputed that Ward met this section's age and length of service requirements because in 1984 he would have either completed 25 years of service or become 50 years old and completed 20 years of service. However, Ward would only have been entitled to an "early-out" pension in 1984 if he met the separation requirements under section 8336(d)(1) or (d)(2). Ward does not claim that he was eligible for a pension under (d)(2) (voluntary separation).

Ward's contention as to (d)(1) (involuntary separation) is that the 1984 RIF notice rendered him eligible for a pension because his separation would have been "involuntary" if he declined the offer of a position two grades lower than his abolished position. The question is what Ward did, not what "would have been." Ward's citation of Yarbrough v. Office of Personnel Management, 770 F.2d 1056 (Fed. Cir. 1985), is totally inapposite.

A federal employee who is separated from the service involuntarily is not entitled to a pension if the employee declined a reasonable offer of another position. See 5 U.S.C. § 8336(d); 5 C.F.R. § 831.503(a) (1999). In the 1984 letter notifying Ward that his GS-11 position was to be abolished, his employer offered him a vacant GS-9 position. Even assuming, dubitante, that Ward could be "eligible" for a pension when he was never separated from service – because he accepted the offered job – and the proper question is whether the 1984

commuting area (emphasis ours).

- 14 -

offer was "reasonable," the only conclusion that can be reached is that the offer was reasonable.  The only ground on which Ward says the offer was not reasonable is location; there was no loss of pay or benefits.

Ward argues that there are insufficient facts in the record for us to determine whether the offer was reasonable because the 1984 RIF letter only refers to the competitive area of the GS-11 food program specialist position he held, and does not indicate whether the GS-9 position the letter offered him was within his commuting area. See 5 U.S.C. § 8336(d); 5 C.F.R. § 831.503(b).  This argument is contradicted by the text of the 1984 notice, which makes it clear that the two GS-9 positions were located in the same office as the two GS-11 positions which were abolished.[4]  Ward's contentions are not only untenable, they ignore the facts.

Ward nonetheless says the matter must be remanded because there is a dispute of fact as to whether the offered GS-9 position was "reasonable" in lights of his experts' opinions that he was "eligible

_____

[4]The May 17, 1984 notice from the USDA Food and Nutrition Service provides:

> In January, 1984 the state of Maine assumed responsibility for the administration of the Child Nutrition (ROAP) Programs.  This action resulted in the review and subsequent reclassification to the GS-9 level of two GS-11 Food Program Specialist positions in the Augusta, Maine Field Office.

for a pension." Although expert testimony may at times be helpful in specialized areas, these conclusions of law were for the court to draw. See Nieves-Villanueva v. Soto-Rivera, 133 F.3d 92, 99-101 (1st Cir. 1997). The expert testimony offered did not address the point on which this case turns, but rather addressed the issue of waiver of military retirement pay, and is inapposite.

## IV. Conclusion

Ward became eligible for his civil service pension only as of April 1, 1986, when he satisfied all prerequisites to the payment of benefits. Thus, the Commissioner of Social Security acted properly in reducing Ward's social security retirement benefits pursuant to the WEP. Accordingly, the order of the district court is **affirmed.**