**Harry RODRIGUEZ ROCHE, Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY, Defendant.**

**No. CIV. 02–2047 HL–JAC.**

United States District Court, D. Puerto Rico.

April 24, 2003.

Oscar Crespo López, Ponce, PR, for Plaintiff.

Camille L. Vélez Rivé, United States Attorney's Office, Torre Chardón, Hato Rey, PR, for Defendant.

## OPINION AND ORDER

CASTELLANOS, United States Magistrate Judge.

This action seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner) denying plaintiff's application for a period of disability and ensuing benefits. Social Security Act, 42 U.S.C. § 405(g). The matter was referred to this Magistrate and a consent to proceed was thereafter received.

Plaintiff initially filed an application for child's disability insurance benefits that was denied. After an administrative hearing was held on May 3, 2000, the Administrative Law Judge (ALJ) issued an opinion that was adopted by the Commissioner. At the administrative hearing, plaintiff and a vocational expert testified. It was determined afterwards that plaintiff was not under disability and as such not entitled to Childhood Disability Benefits under Sections 202(d) and 223 of the Social Security Act.

The provisions of the Social Security Act state that the child of a fully insured individual, is entitled to child's insurance benefits based on the account of the wage earner, if he/she has not attained the age of eighteen or is a full-time student in secondary school and has not attained the age of nineteen or has a disability that began before he/she became twenty-two years old. 42 U.S.C. § 402(d)(1). Plaintiff, who was not a student, filed at age thirty one for child's benefits, claiming that he was disabled before attaining age twenty two, because of a automobile accident he suffered in the year 1988 that resulted in serious skull and facial injuries, post-traumatic epilepsy and resulting mental impairment. He has a ninth grade education and some vocational training and has never been gainfully employed. Plaintiff had returned to live with his parents after a three year lapse where he had resided with his girlfriend and procreated two children.

The opinion of the ALJ indicated plaintiff suffered in June of 1988 a severe motor vehicle accident and sustained serious injuries including a depressed skull fracture,

cerebral contusion, right facial paralysis and fracture to the L5 vertebra. He thereafter developed seizures. The patient underwent reconstructive surgery in 1989 and appeared to be seizure free until 1990, when he suffered some three seizures yearly. He had been under anticonvulsive medication from the onset of this condition. Medical evidence showed poor compliance through laboratory tests displaying low levels of anti-convulsion prescribed medications. The ALJ concluded the medical evidence showed that seizure disorders were under control as of December of 1990, when claimant attained age twenty-two.

In regards to the mental condition, the ALJ found there was no medical evidence of medications for a mental condition or for treatment at any mental health facility prior to having attained age twenty-two. Although recommendations for treatment of a traumatic stress disorder appear during the relevant period, it is not until September 1993, that claimant sought treatment for a mental condition with the Coamo Mental Health Center. The record therein shows numerous absences from September 1993 through August 1996, while claimant was taking vocational studies. Thus, the ALJ concluded there was no medical determinable mental impairment before claimant had attained age twenty-two.

Claimant was found to suffer a disc condition, epileptic seizures, and osteoarthritis, during the relevant period, which were considered severe impairments. There was no limitation of motion, no significant muscle spasm or neurological deficits, nor was there medical evidence to document the frequency of the seizures. The ALJ concluded that although claimant should not perform medium or heavy exertion to avoid exacerbation of symptoms, he retained the residual functional ability for light work, further limited by not being exposed to environmental hazards, unprotected heights, moving or cutting machinery, or driving. Since claimant had no skills and no prior work experience, the ALJ determined he was able to perform light, unskilled work. On this assumption, the vocational expert was examined as to the existence of jobs, of light and sedentary nature, within the above limiting factors. The vocational expert's testimony addressed the existence of jobs such as a table worker and laboratory equipment cleaner that were light in physical demands and unskilled. Still, if credibility was afforded to allegations of inability to handle his own funds, plaintiff could not do work in a sustained manner.

On the above findings the ALJ determined, which was adopted as the final decision of the Commissioner, that claimant was not disabled nor entitled to child's benefits.

█ A perusal of the medical record sustains the ALJ's determination that this patient was seizure free or that he had failed to comply with the use of prescribed medication to avoid episodes of seizure. Absent also is medical evidence of a significant mental condition or prescribed medication for same during the period at issue, that is, prior to reaching age twenty-two.

The medical record available shows on January of 1991 a referral for treatment of post-traumatic stress and a combination of neurological and psychiatric treatment was recommended. Previously, in October of 1990, the ACAA (Motor Vehicle Accident Compensation Administration) record shows that request for treatment of anxiety symptoms in September of 1990 was denied coverage and the patient was told to resort to public mental health facilities. Neurological treatment for the severe trauma was, however, extended year after year up to 1999.

Epilepsy is an impairment that may render a person disabled under the Social Security Act. 20 C.F.R. Part 404, Subpart P, App. 111.00–.03,[1] but its existence does not foreclose plaintiff's obligation to demonstrate that he is unable to engage in substantial gainful activity. For such purpose, the ALJ also received the testimony of a vocational expert, further considering that plaintiff has limited education and no previous work experience, to provide evidence of jobs available in the national economy. The vocational expert testified that there were jobs for an individual without limitation as to bending, kneeling, or stooping, but who should avoid driving, moving machinery, or heights.

While still receiving treatment in 1988, the patient was described as alert and cooperative. He was well oriented. The patient suffered right peripheral facial nerve palsy. There was normal range of movement. Muscle strength was normal. He suffered from loss of right parietal bone tissue due to the vehicular accident. By 1989, after receiving therapy and reconstructive surgery, he was able to close his eyelids completely and the mouth looked straight until he smiled. The electroencephalography report was normal.

Neurologist Dr. Angel Berlingiri reported in 1989 mild facial paralysis. The patient was prescribed Dilantin 100 mg. for the post-traumatic seizure disorder and the mild organic brain syndrome. By 1990 there is a report as to another episode of seizure but the blood level of Dilantin was low. The patient was prescribed Luminal 100 mg.

Reports of Dr. Reinaldo Carreras in 1990 showed the seizures were well controlled with the new medication (Phenobarbital 100 mg.). There was a normal neurological examination except for slightly impaired memory and mild peripheral facial paralysis.

A certificate from Dr. Roberto M. Capestany dated January 24, 1991, states the patient suffered from post-traumatic cerebral syndrome and post-traumatic stress disorder for which a combined neurologic and psychiatric treatment should be provided.

The electroencephalography report of March 11, 1991, presented a moderately abnormal E.E.G. indicating focal dysfunction of the right temporal and parietal lobes for which a structural lesion was suspected as the cause of above abnormality. A neurological evaluation in 1991 of the treating physician, Dr. Reinaldo Carreras, refers to theneed for additional neurological treatment and continuance of the anti-convulsive medication. No mental conditions appear. The reports for the years 1992 and thereafter (1993–1995) show similar diagnostic impressions.

Upon consultation with the ACAA, the agency determined that the case entailed a severe trauma due to a neurological condition not due to an emotional condition, for which no coverage was allowed regarding the request for treatment as to the mental condition. Thereafter, the patient seems to have attended treatment for his claimed mental condition in 1993 at the Department of Health, Coamo Mental Health Center. The report of September 28, 1993, refers to a 24 year-old male without previous history of mental disorder, who arrived escorted by his mother to request services. He looked nervous and very impatient but was coherent and oriented. The record at the Coamo Clinic shows the

---

1. See 111.02 Major motor seizure disorder A and B and 111.03 minor motor seizure disorder.

patient attended some of the appointments alone and on numerous occasions missed his appointments and his parents would attend to inform that he was undergoing vocational rehabilitation studies and to receive the medications for him (Vistaril and Thorazine 10 mg.). At times when he showed up at the Coamo Clinic, he stated to be calm and sleeping well. He would speak in a logic and coherent manner. Throughout the time-frame for mental health treatment, the patient had already attained age twenty-two.

The law grants benefits to [e]very child ... of an individual entitled to old-age or disability insurance benefits ... 42 U.S.C. § 402(d)(1). The Senate Report No. 2133 recognizes "the situation faced by people who have the care of a child because of mental deficiency never grows up, or who because of a physical impairment requires constant care throughout his life". 84th Cong., 2d Sess. 2, *reprinted* in 1956 U.S. Cong. & Ad. News 3877, 3881.

Courts are not to re-weight the evidence or substitute its judgment for that of the Commissioner when the record before the administrative agency has been comprehensive and thorough. *Colon v. Secretary of Health & Human Serv.*, 877 F.2d 148 (1st Cir.1989). The issue to be considered by the Court in this kind of cases is whether the decision of the ALJ is supported by substantial evidence, which has been defined as "more than a mere scintilla" and "such as a reasonable mind might accept as adequate to support a conclusion". *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

Thus, judicial review of social security claims is limited to determining whether the ALJ used proper legal standards and found facts upon the proper quantum of evidence. *Ward v. Commissioner*, 211 F.3d 652, 655 (1st Cir.2000).

Upon an examination of the record as a whole, this Magistrate finds that the decision of the Commissioner is supported by substantial evidence and is to BE AFFIRMED. Judgment to be entered accordingly.

IT IS SO ORDERED.