UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Mark A. Knowlton

     v.                                Civil No. 20-cv-245-JL
                                                Opinion No. 2021 DNH 060

Andrew Saul, Commissioner
of Social Security

## ORDER ON APPEAL

Mark A. Knowlton has appealed the Social Security Administration's ("SSA") denial of his claim for a period of disability and application for disability insurance benefits and supplemental security income. Knowlton initially filed his application for benefits in November 2014, alleging disability as of November 1, 2011. The Administrative Law Judge ("ALJ") at the SSA denied his application, concluding that Knowlton was not disabled, as he could perform jobs that exist in significant numbers in the national economy if he stopped his substance use. See 20 C.F.R. §§ 404.1535, 416.935. Knowlton appealed the decision, and the SSA Appeals Council declined his request for review, with the result that the ALJ's decision became the final decision on Knowlton's application. See id. §§ 404.967, 404.981.

Knowlton now appeals the Commissioner's decision to this court and requests a reversal. See LR 9.1(c). The court has jurisdiction under 42 U.S.C. § 405(g) (Social Security). Knowlton argues that the ALJ erred in her evaluation of the medical evidence when assessing his residual functional capacity ("RFC"), by improperly omitting a limitation related to leg elevation and by placing partial weight on the opinion of an examining physician. Knowlton also contends that the ALJ erred by failing to evaluate his lumbar impairment and its effects on his ability to work.

The Commissioner, in turn, moves for an order affirming the decision. <u>See</u> LR 9.1(d). After careful consideration of the parties' submissions and the administrative record, the court grants Knowlton's motion based on the ALJ's failure to consider his lumbar impairment, denies the Commissioner's motion, and remands the case for further proceedings.

## I.      **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). If, however, the ALJ derived her findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," her findings are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

## II.      **Background[1]**

Knowlton filed an application for a period of disability and disability insurance benefits under Title II and an application for supplemental security income under Title XVI in November 2014, alleging that he was disabled as of November 1, 2011 due to dual calcaneal heel fractures,

---

[1] The court recounts here only those facts relevant to the instant appeal. Knowlton recites the record facts more completely in his Statement of Material Facts (doc. no. 6), and the Commissioner did not file his own Statement of Material facts. The court incorporates Knowlton's facts by reference.

back injury, and depression.[2]  Both claims were denied after a finding that Knowlton's "condition was not disabling on any date through [June 30, 2015], when [he] was last insured."[3] Knowlton subsequently requested a hearing before an ALJ, which took place in August 2018.

The record on Knowlton's physical impairments consists of a few different medical opinions and reports.  Frank Graf, M.D., completed a consultative orthopedic examination on Knowlton in May 2015.  Dr. Graf found that Knowlton had deformities on both of his heels and pain in certain parts of his back and feet.  Dr. Graf also noted that Knowlton "was not able to consecutively toe walk with both pain in the mid feet and problems with balance . . . ."[4]  Dr. Graf diagnosed Knowlton with "bilateral calcaneal fractures with subtalar osteoarthritic change and chronic mid foot pain," as well as "chronic lumbosacral pain."[5]  Dr. Graf concluded that Knowlton was "impaired in basic functional movement patterns of walking, climbing, and standing" due to his bilateral calcaneal fractures, and "limited in tolerances for carrying, bending, stooping, and lifting" due to his chronic lumbosacral pain.[6]

The following month, in June 2015, Jonathan Jaffe, M.D., a State agency medical consultant, reviewed Knowlton's record and completed an RFC assessment.  Jaffe placed "great weight" on two medical opinions – that of Dr. Graf and a mental health practitioner.[7]  Thus, Dr. Jaffe's assessment of Knowlton's physical impairments was sourced largely from Dr. Graf's

---

[2] Administrative Transcript ("Tr.") 91.

[3] Tr. 115.

[4] Tr. 523.

[5] Id.

[6] Tr. 523.

[7] Tr. 97.

3

examination findings, diagnoses, and conclusions regarding Knowlton's functional limitations. Dr. Jaffe determined that Knowlton suffered from three severe, medically determinable impairments – "fractures of LE," "osteoarthrosis and allied disorders," and "DDD (Disorders of the back – discogenic and degenerative)."[8] Dr. Jaffe also concluded that Knowlton had a number of exertional and postural limitations, including that he could occasionally stoop, balance, and crouch; stand for a total of four hours a day; occasionally lift 20 pounds; and frequently lift 10 pounds.[9]

The remaining medical records in the file that pertain to Knowlton's physical health are from three years later, and they all concern his foot and ankle impairments. In August and September 2018, Knowlton visited a podiatrist, Marc Bessette, DPM, regarding his foot and ankle pain. Dr. Bessette diagnosed Knowlton with severe degenerative joint disease.[10] He recommended a "Richie Brace" on each foot for pain control.[11] Knowlton's file shows that he presented at Boston Brace International for the Richie Brace in September 2018, and, in the same month, Knowlton was seen by another podiatrist, Billie Bondar, DPM.[12]

In her written decision, the ALJ followed the requisite five-step evaluation to determine whether Knowlton was disabled. See 20 C.F.R. §§ 404.1520, 416.920. At step one, the ALJ found that Knowlton had not engaged in substantial gainful activity since his alleged disability date of November 1, 2011. At step two, the ALJ found that Knowlton suffered from two severe

---

[8] Tr. 95.

[9] Tr. 97-98.

[10] Tr. 583.

[11] Id.

[12] Tr. 638, 782.

4

impairments—posttraumatic arthritis of the bilateral ankle and polysubstance abuse and dependence. At step three, the ALJ found that Knowlton's impairments did not meet or medically equal the criteria for one of the listed impairments in the Social Security regulations.

At step four, the ALJ assessed Knowlton's RFC based on "the overall weight of the evidence of record," and concluded that Knowlton had the RFC to complete light work except:

> He can lift up to 20 pounds occasionally and lift up to 10 pounds frequently; he can sit up for 6 hours during an 8-hour workday; he can occasionally climb ramps and stars; never climb ladders, ropes, and scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; avoid concentrated exposure to unprotected heights; he will be off-task for at least 20% of the workday; he would be absent from work at least 4 days per month on a regular and consistent basis.[13]

In making this assessment, the ALJ gave "partial weight" to Dr. Graf's opinion and "great weight" to Dr. Jaffe's subsequent opinion. She also noted that Knowlton sought additional treatment in 2018 for his foot and ankle pain, and "the objective findings within his physical examination [from 2018] do[] not appear significantly different from Dr. Graf's findings."[14] She also added that the 2018 treatment records included a reference to the need for leg elevation, but she "did not include this limitation within the [RFC]" as "there [we]re no other reference in the record to the need for leg elevation."[15]

Based on this RFC, the ALJ determined that Knowlton was unable to perform his past relevant work as a construction worker. And at step five, the ALJ considered Knowlton's age, education, work experience, and RFC, and concluded that jobs which Knowlton can perform do

---

[13] Tr. 19. The ALJ concluded that the same RFC would apply if Knowlton stopped the substance abuse, as the substance abuse "has no effect on the severity of his physical impairments," which are reflected in the RFC. Tr. 24.

[14] Tr. 20.

[15] Id.

not exist in significant numbers in the national economy. Under the regulations, the ALJ must also determine whether Knowlton would still be disabled absent his substance use disorder; if not, then he is not disabled under the SSA. See 20 C.F.R. §§ 404.1535, 416.935. Accordingly, the ALJ assessed the impact of Knowlton's substance use disorder on his mental and physical limitations and his RFC. The ALJ concluded that if Knowlton stopped his substance use, there would be a significant number of jobs in the national economy that Knowlton could perform, including bench assembler, inspector/hand packager, and merchandise marker.[16]

The ALJ accordingly denied Knowlton's claims for SSI and DIB in January 2019. This appeal followed.

III.    **Analysis**

Knowlton moves to reverse the ALJ's decision on two grounds. First, Knowlton contends that the ALJ erred when assessing his RFC by not incorporating his need to elevate his legs to alleviate his pain, and by giving partial weight to Dr. Graf's medical opinion. Second, Knowlton avers that the ALJ erred by failing to evaluate his lumbar impairment as a severe, medically determinable impairment at step 2, and as a limitation on his RFC. The latter argument is meritorious and dispositive.

Dr. Graf and Dr. Jaffe both opined on Knowlton's lumbar impairment. Dr. Graf diagnosed Knowlton with "chronic lumbosacral pain with a partial sensory pattern change in an L5 pattern" after noting that his "lumbosacral examination [was] positive on manipulation of S4 and S5 process."[17] Dr. Graf also concluded that Knowlton's lumbosacral pain limited his

---

[16] Tr. 25.

[17] Tr. 523.

"tolerances for carrying, bending, stooping, and lifting . . . ."[18]  In his RFC assessment, Dr. Jaffe noted these findings and conclusions from Dr. Graf and listed "disorders of back – discogenic degenerative" ("DDD") as a severe, medically determinable impairment.[19] Consistent with Dr. Graf's opinion of the physical limitations associated with Knowlton's lumbar impairment, Dr. Jaffe concluded that Knowlton could lift 20 pounds occasionally; lift 10 pounds frequently; and only occasionally stoop, crouch, and kneel.[20]

Despite the evidence of lumbar impairment in the record, the ALJ did not list it as a severe impairment at step two of the five-step analysis, nor did she address the impairment or its omission in her written decision, including in the RFC assessment.  Moreover, Knowlton's back issues were only discussed once during the hearing, when the ALJ asked Knowlton if he had physical limitations other than his foot and ankle impairment.  Knowlton testified that he "did have some back issues" when he was "doing more volume of work," but "[w]here [his] schedule ha[d] . . . lessened up over the past number of years, [he] ha[dn't] been experiencing them lately."[21]  The ALJ did not further probe this issue.

The ALJ's failure to list the lumbar impairment as a severe, medically determinable impairment at step two of the analysis is harmless error since the ALJ found two other severe impairments at that step, "and that finding is all that step two requires."  Baker v. Astrue, 2011 WL 6937505, at *9 (D.N.H. Nov. 15, 2011) (McCafferty, J.).  In other words, "because

---

[18] Id.

[19] Tr. 95.

[20] Tr. 98.

[21] Tr. 57.

[Knowlton's] claim was not denied at [s]tep [two], the ALJ's error was harmless." Martinez v. Colvin, 2014 WL 910146, at *7 (D.N.H. Mar. 10, 2014) (McCafferty, J.).

But at step four, when assessing a claimant's RFC, the ALJ must consider "all [] medically determinable impairments of which [she is] aware." 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2). The ALJ's failure to consider Knowlton's lumbar impairment when formulating his RFC constitutes a direct contradiction to Dr. Jaffe's opinion, since Dr. Jaffe listed DDD as a medically determinable impairment.

If the ALJ sought to depart from this aspect of Dr. Jaffe's medical opinion—an opinion that she otherwise placed great weight on—she should have provided a reasoning for this departure. See Snow v. Astrue, 2011 WL 4828656, at *4 (D.N.H. Oct. 12, 2011) (McAuliffe, J.) ("Although an ALJ need not adopt all or any part of a particular provider's report, he must state his reasons for adopting only a portion of it."). "An explanation is needed because, without it, this court cannot meaningfully review the ALJ's decision." Id. (citing Kenerson v. Astrue, 2011 WL 1981609, at *6 (D.N.H. May 20, 2011)). Indeed, without an explanation, the court does not know whether the ALJ simply overlooked the impairment; concluded that it was not medically determinable; or found some other reason(s) to discredit the diagnosis and its effect on Knowlton's ability to work. [22] Absent this basic understanding of the ALJ's decision, the court cannot review it and determine whether it is supported by substantial evidence.

---

[22] The Commissioner argues that the lumbar impairment was not medically determinable because it was not "shown by medically acceptable clinical and laboratory diagnostic techniques," but was instead based on Knowlton's "statement of symptoms, a diagnosis, or a medical opinion." 20 C.F.R. §§ 404.1521, 416.921. For example, the Commissioner notes that Dr. Graf did not complete X-rays or an MRI of Knowlton's back. Notably, however, Dr. Graf conducted a lumbosacral examination, which was positive for pain on certain manipulations. The Commissioner does not provide support for the assertion that this examination is not a medically acceptable clinical technique for establishing lumbosacral impairment. Regardless, the court should not decide whether the lumbar impairment is medically determinable. The ALJ should

The Commissioner argues that, even if the court finds that the ALJ erred by not considering the effects of Knowlton's lumbar impairment when assessing the RFC (a conclusion that the court cannot reach without the ALJ's explanation on the matter), the error was harmless because the ALJ's RFC assessment was consistent with that of Dr. Graf and Dr. Jaffe, both of whom considered Knowlton's lumbar impairment when assessing his limitations. The court disagrees. The Commissioner is correct that the doctors both considered Knowlton's lumbar impairment and listed associated physical restrictions in their opinions, including limitations in lifting, carrying, and bending. The court also agrees that the ALJ adopted these limitations from Dr. Jaffe's RFC assessment. Specifically, the ALJ adopted Dr. Jaffe's finding that Knowlton could lift 20 pounds occasionally; lift 10 pounds frequently; and only occasionally stoop, crouch, and kneel.

Even accepting all that, the court cannot "conclude with confidence that the ALJ's decision would have been the same" if she had actively considered the lumbar impairment and its effects on Knowlton's ability to work. Mackinley v. Astrue, 2011 WL 2148418, at *4 (D.N.H. May 31, 2011) (quoting Abdus–Sabur v. Callahan, 1999 WL 551133, at *4 (1st Cir. 1999)). The court cannot jump to this conclusion because the 2015 opinions of Dr. Graf and Dr. Jaffe were outdated as to Knowlton's back issues by the time the ALJ could have relied upon them in late 2018. See Hughes v. Berryhill, 2018 WL 791236, at *3 (D.N.H. Feb. 8, 2018)

---

make this decision in the first instance, as it is not the court's role to reweigh the evidence. See Mitchell v. Comm'r of Soc. Sec., 2020 WL 1316350, at *18 (N.D. Ohio Mar. 12, 2020) (remanding for the ALJ to determine if the claimant's bipolar disorder was a medically determinable impairment in the first instance, where there was no indication that the ALJ previously made such a finding); Ortega v. Berryhill, 2019 WL 3719463, at *3 (D.N.H. July 18, 2019) (McCafferty, J.) ("reweigh[ing] the evidence in the record . . . is beyond the scope of the court's review").

(DeClerico, J.) (finding state agency physician opinions from three years prior to the ALJ's decision "outdated"). "[A]n ALJ may rely on a consultant's outdated opinion if he determines that the evidence postdating the opinion did not materially change the record on which it was based." Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (Barbadoro, J.). "The record remains materially unchanged where the new evidence either reveals no greater limitations or is arguably consistent with the consultant's assessment," and the "burden is on the ALJ . . . to make that determination and he must make it adequately clear." Id. (internal citations omitted).

The record here is devoid of any new medical opinion or evidence regarding Knowlton's lumbar impairment since 2015, except that Dr. Bessette, a podiatrist, noted in June 2018 that Knowlton has "back issues," and Knowlton testified during the hearing before the ALJ that his back pain had subsided since he stopped working frequently.[23] If the ALJ relied on these two data points to conclude that Knowlton did not experience a material change in his lumbar impairment since 2015, that conclusion is not supported by substantial evidence. If the ALJ, on the other hand, sought to further develop the record to determine the presence or absence of a material change since 2015, the court does not know what new information would have arisen, and if this could have changed the ALJ's RFC assessment and the outcome of the case.

In sum, the court finds that the ALJ erred by failing to explain how or if she considered Knowlton's lumbar impairment when formulating the RFC. Without these explanations, the court cannot review the ALJ's decision. Nor can the court conclude that, if the omission was an error, such error was harmless. Knowlton is entitled to remand on this basis, and there is thus no need to consider Knowlton's remaining arguments.

---

[23] Tr. 524.

## IV.    Conclusion

For the reasons detailed above, Knowlton's motion to reverse the decision[24] of the Commissioner is GRANTED.  The Commissioner's motion to affirm the decision[25] is DENIED. This case is remanded for further proceedings.  Because remand is pursuant to sentence four of 42 U.S.C. § 405(g), the Clerk of Court is instructed to enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Joseph N. Laplante
United States District Judge

Dated:    March 29, 2021

cc:    Bainbridge Testa, Esq.
       Jessica Richards, Esq.

---

[24] Doc. no. 6.

[25] Doc. no. 7.

11