UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Christopher David Curtis

　　　v.

Civil No. 20-cv-1140-JL
Opinion No. 2022 DNH 041

Kilolo Kijakazi, Acting Commissioner
of Social Security

# ORDER ON APPEAL

Christopher Curtis has appealed the Social Security Administration's ("SSA")

denial of his applications for disability insurance benefits and supplemental security

income under the Social Security Act.  Curtis filed the applications in July 2018, stating

that he was disabled as of February 15, 2018.[1]  The Administrative Law Judge ("ALJ") at

the SSA denied his applications, concluding that despite having a severe impairment,

Curtis retained the residual functional capacity ("RFC") to perform his past relevant work

and was therefore not disabled.  See 20 C.F.R. §§ 404.1520(f), 416.920(f).  Curtis

appealed the decision, and the SSA Appeals Council declined his request for review, with

the result that the ALJ's decision became the final decision on Curtis's application.

Curtis now appeals the Commissioner's decision to this court and requests a

reversal.  See LR 9.1(c).  The court has jurisdiction under 42 U.S.C. § 405(g) (Social

Security).  Curtis argues that the ALJ erred by improperly evaluating the medical

---

[1] Administrative Transcript ("Tr.") 199-210.

1

evidence and Curtis's subjective statements regarding his symptoms when determining his physical RFC. The Commissioner objects and moves for an order affirming the decision. See LR 9.1(d). After careful consideration of the parties' submissions and the administrative record, the court grants Curtis's motion and denies the Commissioner's motion, finding that the ALJ erred by basing his RFC determination on the opinions of non-examining state agency physicians, without adequately showing that the physicians relied on a complete medical record.

## I.      **Applicable legal standard**

The court limits its review of a final decision of the SSA "to determining whether the ALJ used the proper legal standards and found facts upon the proper quantum of evidence." Ward v. Comm'r of Soc. Sec., 211 F.3d 652, 655 (1st Cir. 2000). It "review[s] questions of law de novo, but defer[s] to the Commissioner's findings of fact, so long as they are supported by substantial evidence," id., that is, "such evidence as a reasonable mind might accept as adequate to support a conclusion," Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). If, however, the ALJ derived his findings by "ignoring evidence, misapplying the law, or judging matters entrusted to experts," his findings are not conclusive. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam).

## II.    **<u>Background</u>**[2]

Curtis is a thirty-two year old male with a high school education who previously worked, for example, as a sales associate at a retail store, a forklift operator, and a crew member in the food service industry, operating the cash register and cleaning the premises.[3]  He applied for disability insurance benefits and supplemental security income in July 2018, alleging a disability as of February 2018.  His alleged disability is focused, in pertinent part, on a spinal condition resulting in back pain, as well as hip and lower extremity pain.

After his claims were denied, Curtis requested a hearing before the ALJ, which took place in January 2020.  At the hearing, Curtis testified regarding his employment history, treatments, daily activities, and symptoms.  Following the hearing, the ALJ issued a written opinion denying Curtis's applications.

In his written decision, the ALJ followed the requisite five-step evaluation to determine whether Curtis was disabled.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that Curtis had not engaged in substantial gainful activity since the alleged disability date.  At steps two and three, the ALJ concluded that Curtis suffers from the severe impairment of degenerative disc disease in the lumbar spine, but this impairment does not meet or medically equal the criteria for one of the listed impairments

---

[2] The court recounts here only those facts relevant to the instant appeal.  The parties' more complete recitations in their Statements of Material Facts (Doc. Nos. 11 & 14) are incorporated by reference.

[3] Tr. 227-34.

in the Social Security regulations. At step four, the ALJ found that Curtis has the RFC to complete light work except "claimant can occasionally climb ramps / stairs / ladders / ropes / scaffolds, balance, stoop, kneel, crouch, and crawl."[4] Based on this RFC, at step five, the ALJ determined that Curtis was capable of performing "past relevant work as an assistant manager . . . and retail cashier . . . ."[5]

Further details regarding the ALJ's physical RFC determination are pertinent to the court's analysis. In making his RFC determination, the ALJ considered Curtis's testimony at the hearing before the ALJ, Curtis's treatment records, and medical opinions. The medical opinions were from treating physician assistant ("PAC") Peter Attenborough, joined by physiatrist Minh Tran; treating primary care physician Dr. Kenneth Shuman; consulting orthopedist Dr. Frank Graf, who examined Curtis once; and non-examining state agency physicians Dr. Judy Brasier and Dr. Diana Dorsey. The ALJ concluded that the opinions of the consulting orthopedist and non-examining state agency physicians were more persuasive than the opinions of the treating physician and PAC. Further, in determining Curtis's physical RFC, the ALJ essentially adopted the opinion of one of the state agency physicians, Dr. Dorsey. The court outlines the medical opinions and the ALJ's assessment of them in brief below.

---

[4] Tr. 15.

[5] Tr. 21.

**A. Medical opinions of consulting and state agency physicians**

In January 2019, after conducting an orthopedic examination of Curtis, consulting orthopedist Dr. Graf noted that Curtis was capable of "heel and toe walking" and had "no visible limp in the office," but he had other limitations and sensitivities.[6] Dr. Graf diagnosed Curtis with "multilevel degenerative disc disease," a history of opioid use, and "limitations in bending, stooping lifting, and carrying."[7] The ALJ found this opinion "somewhat persuasive although vague as to specific exertional limitations."[8]

In January 2019, state agency physician Dr. Brasier reviewed the record. She specified that she placed weight on Dr. Graf's opinion since he "provided the most recent exam, which focuses specifically on the claimant's ability to function."[9] Dr. Brasier concluded that Curtis's primary impairment was a spine disorder. She further opined that Curtis could lift or carry up to 20 pounds occasionally and 10 pounds frequently; stand, walk, and sit for six hours each in an eight-hour workday; frequently climb, stoop, and crouch; and occasionally crawl. The ALJ found that Dr. Brasier's opinion was "somewhat persuasive except that the record supports gr[e]ater postural limitations."[10]

---

[6] Tr. 360.

[7] Id.

[8] Id.

[9] Tr. 78.
.
[10] Tr. 109-10.

A few months later, in June 2019, state agency physician Dr. Dorsey reconsidered the record, also gave weight to Dr. Graf's opinion as the most recent examination of Curtis's ability to function, and provided the same conclusions as Dr. Brasier did, with one exception. Dr. Dorsey found that Curtis had greater postural limitations and could only occasionally climb, balance, stoop, kneel, crouch, and crawl.[11] The ALJ concluded that Dr. Dorsey's opinion was "more persuasive than Dr. Brasier's opinion given [Curtis's] complaints of pain and documentation of some limitations in range of motion."[12] When determining Curtis's RFC, the ALJ essentially adopted Dr. Dorsey's opinion.

## B. Medical opinions of treating physician and PAC

According to treating physician Dr. Shuman and treating PAC Attenborough, Curtis's physical impairment resulted in greater limitations than those detailed above. Dr. Shuman began treating Curtis in June 2013.[13] The record includes treatment notes from Dr. Shuman in which he reported on the results of physical examinations conducted on Curtis, as well as Curtis's medical history, pain levels, and attempted treatments, including medications, physical therapy, and weight loss. In a letter dated September 2018, Dr. Shuman wrote that Curtis had experienced "a recent worsening of [his] low back pain," and he also discussed the findings from MRIs conducted in 2013 and

---

[11] Id.

[12] Tr. 20.

[13] Tr. 380.

6

2016. . . . ."[14] Dr. Shuman added that Curtis's back pain "particularly affects him with prolonged standing, bending, or stooping, but it can also be painful with prolonged sitting."[15] The ALJ found the latter statement "somewhat persuasive although also vague as to exertional and postural limitations."[16]

A few months later, in February 2019, Dr. Shuman completed a "multiple impairment questionnaire," in which he diagnosed Curtis with persistent and recurrent back and hip pain that worsens with prolonged sitting or standing, "degenerative joint disease with bulging discs in the mid to lower spine," levoscoliosis, and more.[17] He based these diagnoses on an MRI taken in May 2016, lumbar spine x-rays taken in October 2018, and findings of "low back tenderness on exam with difficulty with transitions from sitting to standing and vice versa at times."[18]

Dr. Shuman opined that, since 2012, Curtis can only work while seated, standing, or walking "on a sustained and ongoing basis" for less than one hour in an eight-hour workday; has to get up from a seated position every 15-20 minutes and then wait 30 minutes before returning to the seated position; can never lift or carry weight; can never or rarely reach; would require breaks from work lasting 10-15 minutes on an hourly

---

[14] Tr. 379.

[15] Id.

[16] Tr. 21.

[17] Tr. 380-81.

[18] Tr. 380.

basis; and would likely be absent from work more than three times a month as a result of his impairment.[19] The ALJ found Dr. Shuman's February 2019 opinion "unpersuasive since treatment records and MRI reports do not support this extreme level of limitation[,]" and the opinion was inconsistent with that of Dr. Brasier, Dr. Dorsey, and Dr. Graf.[20]

Finally, PAC Attenborough examined Curtis on two occasions, in May and July 2019. PAC Attenborough's notes contain a review of Curtis's medical history and file, including his 2016 MRI, and the results of a lumbar spine exam, a hip exam, and other physical exams. PAC Attenborough diagnosed Curtis with degenerative lumbar disc, scoliosis of the thoracolumbar spine, hip pain, and low back pain, and he referred Curtis for physical therapy.[21] During the July 2019 visit, PAC Attenborough noted that Curtis's pain "moderately" limited some of his daily activities, such as "driving, walking, leisure activities[,] and sleep."[22] Like Dr. Shuman, PAC Attenborough also commented that Curtis's back pain "has been occurring in a consistent pattern for years[,]" and "[t]he course has been worsening."[23] PAC Attenborough added that "it is not clear . . . that

---

[19] Tr. 382-84.

[20] Tr. 20.

[21] Tr. 496-98.

[22] Tr. 493.

[23] Id.

8

[Curtis] is totally disabled[;] he may not be able to tolerate physically demanding work[,] but I believe he does have a work capacity."[24]

Following the July 2019 visit, Curtis underwent another MRI in August 2019. In September, PAC Attenborough referred Curtis to the Seacoast Pain Institute of New England, noting that Curtis reported no benefits from his physical therapy.[25] Physician assistant Shelly Landry from the Pain Institute stated in her notes that Curtis received lumbar diagnostic medial branch blocks as treatment,[26] and they were unsuccessful in relieving his pain. PA Landry also wrote that Curtis's prior "conservative" treatments, including two months of physical therapy, Ibuprofen, Tylenol, and weight loss, were also unsuccessful in remedying his pain.[27] PA Landry "therefore . . . recommend[ed] a trial of epidural steroid injections."[28]

A couple months later, in December 2019, PAC Attenborough completed a "pain assessment" for Curtis, which was also signed by physiatrist Dr. Tran. PAC

---

[24] Tr. 494.

[25] Tr. 508.

[26] The medial branch nerves are the "nerves that supply the[] facet joints[,]" which are the "joints that connect one spine vertebra to another." When administering a medial branch block, a doctor "uses a numbing medication to temporarily block the medial branch nerves from sending the pain signals on to [the] brain." If the "pain is relieved by the medial branch block, then the cause of . . . [the] pain is more likely facet joint-related." Lumbar Medial Branch Block (Facet Nerve Injection), SUMMIT ORTHOPEDICS, https://www.summitortho.com/services/back-neck-spine/treatments/injections/lumbar-medial-branch-block-facet-nerve-injection/.

[27] Tr. 538.

[28] Id.

Attenborough referred to Curtis's August 2019 MRI as "clinical and laboratory findings that support [his] diagnoses."[29] Much like Dr. Shuman, PAC Attenborough opined that Curtis experienced "constant" pain that was aggravated by bending, sitting, lifting, and walking. He further opined that, since January 2018, Curtis can work while seated, standing, or walking "on a sustained and ongoing basis" for less than one hour in an eight-hour workday; has to get up from a seated position every 20-30 minutes and then wait 10-15 minutes before returning to the seated position; can occasionally lift up to 10 pounds and occasionally carry up to 20 pounds; would require breaks for 10-15 minutes on an hourly basis; and would likely be absent from work two to three times a month.[30]

The ALJ concluded that PAC Attenborough's opinion was "minimally persuasive" because it described "extreme limitations [that] are not supported by the treatment notes or MRI reports."[31] The ALJ further found that PAC Attenborough's December 2019 opinion contradicted his July 2019 treatment note stating that it "was not clear" that Curtis was completely disabled.[32] The ALJ acknowledged, however, that "Mr. Attenborough's opinion that claimant can work is accorded no weight since determination of that issue is reserved to the Commissioner."[33]

---

[29] Tr. 545.

[30] Tr. 546, 549-51.

[31] Tr. 19.

[32] Id.

[33] Id.

## III.    Analysis

Curtis argues that the ALJ made several errors when determining his RFC. According to Curtis, the ALJ erred by finding the non-examining state agency physicians' opinions persuasive, though they were based on a partial medical record. Curtis avers that the ALJ also erred when he found Dr. Graf's "vague" opinion somewhat persuasive, and when he rejected the opinions of Dr. Shuman and PAC Attenborough as unsupported by the medical evidence in the record, without citing medical authority or further articulating his reasoning. Finally, Curtis challenges the ALJ's finding that Curtis's subjective complaints of his symptoms were not entirely consistent with the record, arguing that this conclusion was not supported by substantial evidence. The court agrees with Curtis's first argument—that the ALJ committed reversible error by relying on Dr. Brasier and Dr. Dorsey's opinions to make the RFC determination, without showing that the opinions were based on a sufficiently complete record. Given that Curtis is entitled to remand on this basis, there is no need to address Curtis's remaining arguments.

"The opinion of a reviewing consultant . . . cannot provide substantial evidence to support an ALJ's RFC finding" if it is "based on a 'significantly incomplete record,'" meaning that the reviewing consultant lacked information that materially changed the record. Giandomenico v. U.S. Soc. Sec. Admin., Acting Comm'r, No. 16-CV-506-PB, 2017 WL 5484657, at *4 (D.N.H. Nov. 15, 2017) (Barbadoro, J.) (internal citations omitted). On the other hand, "an ALJ may rely on a consultant's outdated opinion if he

11

determines that the evidence postdating the opinion did not materially change the record on which it was based" because the new evidence "either reveals no greater limitations or is arguably consistent with the consultant's assessment." Id. (citing Alcantara v. Astrue, 257 Fed. Appx. 333, 334 (1st Cir. 2007); see also Jessica S. v. Kijakazi, No. CV 21-75MSM, 2022 WL 522561, at *3 (D.R.I. Feb. 22, 2022) ("[I]t is error for an ALJ to deny benefits in reliance on a consulting or a non-examining expert physician or psychologist who, despite expertise, was not privy to parts of the medical record that evidence worsening or that support the claimed limitations.").

Importantly, the ALJ bears the burden of showing that either of these conditions is present and must make that determination 'adequately clear.'" Byron v. Saul, No. 18-CV-684-PB, 2019 WL 3817401, at *6 (D.N.H. Aug. 14, 2019) (Barbadoro, J.) (quoting Giandomenico, 2017 WL 5484657, at *4). "In doing so, the ALJ may not interpret raw medical data . . . until its functional significance is assessed by a medical expert[,] . . . [b]ut he may make common-sense judgments about functional capacity based on medical findings," within "the bounds of a lay-person's competence." Id. (internal citations and quotations omitted).

As discussed above, in making the RFC determination, the ALJ found Dr. Shuman and PAC Attenborough's opinions unpersuasive for the most part and minimally persuasive, respectively. He found the opinions of Dr. Graf and Dr. Brasier somewhat persuasive, and he then adopted Dr. Dorsey's opinion after finding it more persuasive than Dr. Brasier's opinion. But Dr. Brasier and Dr. Dorsey's opinions, which formed the

12

basis of the ALJ's RFC determination, were completed in January and June 2019, before the record included Curtis's 2019 MRI, PAC Attenborough's July 2019 treatment notes, and the Pain Institute's notes regarding the failed medial branch blocks and the potential need for steroid injections. Because of the absence of the 2019 MRI from the record, in particular, the state agency physicians' opinions cannot constitute substantial evidence supporting the ALJ's RFC determination.

To begin, the 2019 MRI is a clear example of "raw medical data" that is not within "the bounds of a lay-person's competence[,]" and thus should be assessed by a medical expert in order to determine its functional importance and whether it materially changed the record. Id. Only one medical expert considered the 2019 MRI—PAC Attenborough. In fact, PAC Attenborough explicitly noted that he based his December 2019 opinion, in part, on the 2019 MRI. But the ALJ rejected this opinion as not supported by the medical evidence in the record, including MRIs. In so doing, the ALJ impermissibly relied on his own lay opinion of the 2019 MRI instead of a professional's opinion.

Even if the ALJ were qualified to determine that the MRI did not materially change the record, the ALJ failed to do so because his discussion of the 2019 MRI in his written decision is limited to a brief recitation of its results. The ALJ simply noted that the 2019 MRI "showed no central spinal canal stenosis and mild right-sided and moderate left-sided neuroforaminal narrowing at the L4-L5 level."[34] With this brief, technical snapshot of the 2019 MRI, the ALJ did not sufficiently substantiate that the

---

[34] Tr. 18.

MRI either "reveals no greater limitations or is arguably consistent with [the non-examining physicians'] assessment[s]," such that Dr. Brasier and Dr. Dorsey's opinions can provide substantial evidence to support the ALJ's RFC determination. See Giandomenico, 2017 WL 5484657, at *4.

The ALJ's cursory treatment of the 2019 MRI is also problematic because, at least on its face, the 2019 MRI seems to have presented different results than the prior MRIs in the record—further suggesting that it could have materially changed the record. The record contains physicians' interpretations of MRIs taken in 2013, 2016, 2018, and 2019. The interpretations of the 2013, 2016, and 2019 MRIs are the most detailed and readily comparable, and they differ in a number of ways.

For example, according to the interpretations, Curtis's 2013 MRI showed mild broad-based disc bulge but no neural foraminal narrowing at the L1-2 level.[35] The 2016 MRI presented "mild disc desiccation and disc space narrowing at [the] L1-2 [level] similar to [the] prior exam[,]" and no "significant spinal canal stenosis" or "significant neural foraminal narrowing" at that level.[36] By contrast, the 2019 MRI showed "neuroforamina [that were] patent bilaterally" at the L1-2 level, though there was still "mild broad-based disc bulge" and no significant spinal canal stenosis.[37] At the L4-5 level, the 2013 MRI showed "mild broad-based disc bulge . . . [and] mild left-sided

---

[35] Tr. 501.

[36] Tr. 385.

[37] Tr. 511.

neural foraminal narrowing," while the 2016 MRI showed "a mild annular bulge as well as some mild facet arthrosis" without "significant neural foraminal narrowing."[38] But the 2019 MRI showed "a small central disc protrusion superimposed on a broad-based disc bulge," along with "facet arthropathy" and "mild right-sided and moderate left-sided neuroforaminal narrowing."[39]

The potential importance of the 2019 MRI to the RFC determination is further supported by other evidence in the record that suggests that Curtis's back pain was worsening over time. Both Dr. Shuman and PAC Attenborough pointed out that Curtis's pain was progressing. And the notes from the Pain Institute indicate that, by the middle and end of 2019, Curtis's pain was not manageable with the previous, conservative treatments such as physical therapy, and steroid injections may be advisable. This suggests that a later-in-time MRI from 2019 could have reflected changes to Curtis's spine that could explain and confirm Curtis's intensifying pain.

In sum, the ALJ erred by basing his RFC determination on the opinions of non-examining state agency physicians who may have relied on a materially incomplete record. Without an adequate showing that the record was not materially incomplete when reviewed by Dr. Brasier and Dr. Dorsey, the court cannot review the ALJ's step-five determination. Curtis is entitled to remand on this basis.

---

[38] Tr. 502, 385.

[39] Tr. 511.

## IV.     Conclusion

For these reasons, the Commissioner's motion to affirm[40] is DENIED and Curtis's

motion to reverse or remand[41] is GRANTED.   The clerk shall enter judgment

accordingly and close the case.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

March 29, 2022

cc:     Counsel of Record

---

[40] Doc. no. 13.

[41] Doc. no. 9.